IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Joji Takada, not individually but as | ) | |
| Chapter 7 Trustee of the jointly | ) | |
| administered bankruptcy estates of | ) | |
| Cornhusker RBM, LLC, et al. | ) | |
| | ) | |
| Plaintiff/Counter Defendant, | ) | |
| v. | ) | Case No. 1:14-cv-07555 |
| | ) | |
| The OneBeacon Insurance Group, One | ) | |
| Beacon Professional Insurance, | ) | |
| One Beacon Midwest Insurance Company, | ) | |
| and Atlantic Specialty Insurance Company, | ) | |
| | ) | |
| Defendants/Counter Plaintiffs.) | | |

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendants/Counter Plaintiffs ONE BEACON MIDWEST INSURANCE COMPANY
and ATLANTIC SPECIALTY INSURANCE COMPANY (collectively referred to herein as
"OneBeacon"), pursuant to Rule 13 of the Federal Rules of Civil Procedure, by and through their
attorneys, Carroll McNulty & Kull, LLC, bring their Counterclaim against Plaintiff/Counter
Defendant Joji Takada, not individually but as Chapter 7 Trustee of the jointly administered
bankruptcy estates of Cornhusker RBM, LLC ("Cornhusker"), DIATRI, LLC ("DiaTri"),
Midwest Diagnostic Management LLC, Advance Ancillary Services, LLC, and Diagnostic
P.E.T. Network, LLC[1]  (Takada and the above-referenced bankruptcy estates are collectively
referred to herein as the "Insureds") and in support thereof, states as follows:

---

[1] Bankruptcy Case Nos. 13-26443, 13-26447, 13-26450, 13-26453, and 13-26457, respectively.

## NATURE OF THE ACTION

1.      This counterclaim is an action for declaratory judgment, pursuant to 28 U.S.C. §2201, seeking to resolve matters of actual controversy as to the rights and obligations of the parties under certain insurance policies issued by OneBeacon to the Insureds.

## THE PARTIES

2.      Counter Plaintiff/Defendant OneBeacon Midwest Insurance Company is a corporation duly organized and existing under the laws of the State of Minnesota with its principal place of business at 601 Carlson Parkway, Suite 600, Minnetonka, Minnesota.  At all material times, OneBeacon was authorized to conduct business involving insurance in the state of Illinois.

3.      Counter Plaintiff/Defendant Atlantic Specialty Insurance Company is a corporation duly organized and existing under the laws of the State of Minnesota with its principal place of business at 601 Carlson Parkway, Suite 600, Minnetonka, Minnesota.  At all material times, Atlantic Specialty Insurance Company was authorized to conduct business involving insurance in the State of Illinois.

4.      Counter Defendant/Plaintiff Joji Takada, not individually, but solely as Chapter 7 Trustee for the jointly administered bankruptcy estates of the Insureds, is the duly appointed, qualified, and acting Chapter 7 trustee (the "Trustee") of the bankruptcy estates of the Insureds.

5.      On information and belief, Defendant Diagnostic P.E.T. Network also does business as Diagnostic Benefit Management.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. §1332, because there is complete diversity of citizenship of the parties and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

7.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because, on information and belief, the Defendants reside in this judicial district.

## ALLEGED NOTICE TO ONEBEACON

8.    On or about March 27, 2013, OneBeacon was allegedly informed of possible claims by medical providers against the Insureds for alleged improper acts that may have been committed from 2005 to the present, relating to services by the Insureds.

9.    Over the next several months, OneBeacon received hundreds of pages of documents from the Insureds purportedly concerning claims made by medical providers against the Insureds.

## THE UNDERLYING MATTERS

10.    The documents received by OneBeacon included, without limitation, complaints, demand letters, judgments, settlement agreements, complaints to enforce settlement agreements, citations to discover assets to enforce prior judgments, an Internal Revenue Service Release of Levy, a Healthcare Provider Complaint to the Illinois Department of Insurance, Notices of Judgments Entered, a Request for Garnishment to a third-party garnishee, a complaint filed by a union health and welfare fund seeking return of monies that were not paid to providers, and a complaint filed by Cornhusker against former employees or officers (the "Underlying Matters").

11.     All of the Underlying Matters are related, directly or indirectly, to allegations that the Insureds, unknown entities, and a company named ContainCare, failed to pay medical providers for medical services rendered pursuant to provider agreements.

12.     The Insureds were aware of these underlying matters prior to the November 17, 2011 inception date of Managed Care Organizations Error and Omissions Liability Policy No. MCP-5295-11 issued by OneBeacon Midwest Insurance Company.

13.     At least four lawsuits were filed against certain of the Insureds prior to November 17, 2011, with the earliest of which being filed on March 28, 2011. On information and belief, judgments against certain of the Insureds, and settlements that providers sought to enforce, were also entered into prior to the above-referenced policy inception date.

## THE ONEBEACON POLICIES

14.     OneBeacon Midwest Insurance Company issued Managed Care Organizations Errors and Omissions Liability Policy No. MCP-5295-11 to DiaTri, LLC for the policy period November 17, 2011 to November 17, 2012 ("Policy I"). A true and correct copy of Policy I is attached hereto as Exhibit A.

15.     Endorsement No. 1 to Policy I added the following entities as "Insured Entities" under the policy: Advance Ancillary Services, LLC, Midwest Diagnostic Management, LLC, and Diagnostic P.E.T. Network.

16.     Atlantic Specialty Insurance Company issued Managed Care Organizations Error and Omissions Liability Policy No. MCR-6035-12 to Cornhusker RBM d/b/a Diatri for the policy period November 17, 2012 to November 17, 2013 ("Policy II"). A true and correct copy of Policy II is attached hereto as Exhibit B.

17. Endorsement No. 8 to Policy II added the following entities as "Named Insureds": Advance Ancillary Services, LLC, Midwest Diagnostic Management, LLC, and Diagnostic P.E.T. Network, LLC d/b/a Diagnostic Benefit Management.

18. Endorsement No. 3 to Policy II added DiaTri, LLC as a "Named Insured" with a run-off date of March 9, 2012.

## POLICY I

19. Policy I contains the following Insuring Agreements:

**I.    INSURING AGREEMENTS**

**(A)    Managed Care Errors and Omissions Insurance**

The Underwriter will pay on behalf of the **Insured** any **Loss** which the **Insured** is legally obligated to pay as a result of any **Claim** that is first made against the **Insured** during the **Policy Period** and reported to the Underwriter either during the **Policy Period** or in any event within ninety (90) days after the end of the **Policy Period**, in accordance with CONDITION (B) of this Policy. If an Extended Reporting Period is applicable, such coverage will apply only to any **Claim** that is first made against the **Insured** during the Extended Reporting Period and reported to the Underwriter either during the Extended Reporting Period or in any event within ninety (90) days after the date any such **Claim** is first made, in accordance with CONDITION (B) of this Policy. As part of and subject to the Limits of Liability stated in ITEM 3(a) of the Declarations, the Underwriter will have the right and duty to defend any **Claim** made against any **Insured** which is covered by this Policy, even if the allegations of such **Claim** are groundless, fake or fraudulent.

20. Policy I contains the following pertinent Definitions:

**II.    DEFINITIONS**

\*\*\*

(D)    **"Claim"** means any written notice received by any **Insured** that a person or entity intends to hold an **Insured** responsible for a **Wrongful Act** which was committed or allegedly committed on or after the Retroactive Date listed in ITEM 7 of the Declarations. In clarification and not in limitation of the foregoing, such notice may be in the form of an arbitration, mediation, judicial, declaratory or injunctive proceeding. A **Claim** will be deemed to be made when such written notice is first received by any **Insured.**

***

(I)    **"Insured"** means any **Insured Entity** and any **Insured Person**.

(J)    **"Insured Entity"** means the **Named Insured** and any other entity designated on SCHEDULE A.

(K)    **"Insured Person"** means any past, present or future:

    (1) employee, director, officer, trustee, member of the board of managers, governor or medical director of, or volunteer for, any **Insured Entity**;

***

but only while any such person is acting within the scope and capacity of his or her duties for the **Insured Entity.**

***

(L)    **"Loss"** means **Personal Information Protection Event Expenses**, **Defense Expenses** and any monetary amount which an **Insured** is legally obligated to pay as a result of a **Claim**.

**Loss** shall include:

    (1)    a claimant's attorney's fees and court costs, but only in an amount equal to the percentage that the amount of monetary damages covered under this Policy for any settlement or judgment bears to the total amount of such settlement or judgment;

    (2)    premiums on appeal bonds required to be furnished with respect to any judgment; and

    (3)    punitive, exemplary or multiplied damages; provided, that punitive or exemplary damages are insurable only if such punitive or exemplary damages are based on vicarious liability.

**Loss** shall not include:

(i)      fines, penalties or taxes; provided, that (A) punitive damages shall not be deemed to constitute fines, penalties or taxes for any purpose herein, and (B) **Loss** shall include fines and penalties imposed under the Health Insurance Portability and Accountability Act or in **Claims** for **Antitrust Activity**, but only if such fines and penalties are insurance under applicable law most favorable to the insurability of such fines and penalties;

(ii)     fees, amounts, benefits, coverage or obligations owed under any contract with any party (including providers of **Medical Services**), health care plan or trust, insurance or workers' compensation policy or plan or program of self-insurance;

(iii)    non-monetary or equitable relief or redress in any form, including without limitation the cost of complying with any injunctive, declaratory or administrative relief, or restitution or disgorgement of funds; or

(iv)    matters which are uninsurable under applicable law. (As amended by Endorsement Nos. 4 & 5).

***

(M)    **"Managed Care Activity"** means any of the following services or activities, whether provided on paper, in person, electronically, or in any other form and whether performed for or on behalf of the **Insured** or by the **Insured** for itself or on behalf of any other party for a fee: **Provider Selection; Utilization Review**; advertising, marketing, selling, or enrollment for health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans; **Claims Services**; establishing health care provider networks including tiered networks; provision of information with respect to tiered networks and/or consumer directed health care plans, including cost and quality information regarding specific providers, services and/or charges; reviewing the quality of **Medical Services** or providing quality assurance; design and/or implementation of financial incentive plans; design and/or implementation of **Pay for Performance Programs**; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or protocols; triage for payment of **Medical Services**; and services or activities performed in the administration or management of health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, workers' compensation

7

plans, or scheduling of diagnostic tests. (As amended by Endorsement No. 2).

*** 

(V)    **"Related Claims"** means all **Claims** for **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way.

***

(AA)    **"Wrongful Act"** means:

(1) any actual or alleged act, error or omission in the performance of, or any failure to perform, a **Managed Care Activity** by any **Insured Entity** or by any **Insured Person** acting within the scope of his or her duties or capacity as such; . . .

21.    Policy I contains the following pertinent Exclusions:

## III.    EXCLUSIONS

(A)    Except for **Defense Expenses**, the Underwriter shall not pay **Loss** from any **Claim** brought about or contributed to by:

(1)    any willful misconduct or dishonest, fraudulent, criminal or malicious act, error or omission by any **Insured;**

(2)    any willful violation by any **Insured** of any law, statute, ordinance, rule or regulation; or

(3)    any **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled.

For the purposes of determining the applicability of this EXCLUSION (A), no **Wrongful Act** of any **Insured** shall be imputed to any other **Insured.** Determination of the applicability of this EXCLUSION (A) may be made by an admission or by a final adjudication in a proceeding constituting the **Claim**, or in a proceeding separate from or collateral to any proceeding constituting the **Claim**.

8

\*\*\*

(C)     The Underwriter shall not pay **Loss**, including **Defense Expenses**, from any **Claim**:

\*\*\*

(8)     based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event, **Wrongful Act** or series of facts, circumstances, situations, transactions, events or **Wrongful Acts**:

(a)     underlying or alleged in any litigation or administrative or regulatory proceeding brought prior to and/or pending as of the Inception Date stated in ITEM 2(a) of the Declarations:

(i)     to which any **Insured** is or was a party; or

(ii)     with respect to which any **Insured**, as of the Inception Date, knew or should reasonably have known (based on a "reasonable person" standard) that an **Insured** might be made a party thereto; or

(b)     which was the subject of any notice given prior to the Inception Date under any other policy of insurance or plan or program of self-insurance.

If, however, this Policy is a renewal of one or more policies previously issued by the Underwriter to the **Insured Entity**, and the coverage provided by the Underwriter to the **Insured Entity** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this EXCLUSION (C)(8) to the Inception Date will be deemed to refer instead to the inception date of the first policy under which the Underwriter began to provide the **Insured Entity** with the continuous and uninterrupted coverage of which this Policy is a renewal;

22.     Policy I contains the following Conditions:

## IV.     CONDITIONS

(A)     **Limit of Liability**

\*\*\*

(4)    The obligation of the Underwriter to pay **Loss**, including **Defense Expenses**, will only be in excess of the applicable retention set forth in ITEM 4 of the Declarations. The Underwriter will have no obligation whatsoever, either to the **Insureds** or to any other person or entity, to pay all or any portion of any retention amount on behalf of any **Insured**, although the Underwriter will, at its sole discretion, have the right and option to do so, in which event the **Insureds** agree to repay the Underwriter any amounts so paid.

***

(C)    **Related Claims Deemed Single Claim; Date Claim Made:**

All **Related Claims**, whenever made, shall be deemed to be a single **Claim** and shall be deemed to have been first made on the earliest of the following dates:

(1) the date on which the earliest **Claim** within such **Related Claims** was received by an Insured; or

(2) the date on which written notice was first given to the Underwriter of a **Wrongful Act** which subsequently gave rise to any of the **Related Claims**, regardless of the number and identity of claimants, the number and identity of **Insureds** involved, or the number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were made in more than one **Policy Period**.

(D)    **Defense and Settlement:**

(1)    No **Insured** may incur any **Defense Expenses** or admit liability for or settle any **Claim** without the Underwriter's written consent. The Underwriter will have the right to make investigations and conduct negotiations and, with the consent of the **Insureds**, enter into such settlement of any **Claim** as the Underwriter deems appropriate . . .

## POLICY II

23.    Policy II contains the following Insuring Agreement:

**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST YOU DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. CLAIM EXPENSES ARE PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY CLAIM EXPENSES, AND CLAIM EXPENSES WILL BE APPLIED AGAINST THE RETENTION. WE**

**WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS OR CLAIM EXPENSES ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED . . .**

## I.  WHAT THIS POLICY COVERS

**We** will pay on **your** behalf **Damages** and **Claim Expenses** in excess of the Retention that **you** are legally obligated to pay as a result of a **Claim** for:

(A)  an act, error, or omission, or serious of acts, errors, or omissions, committed or allegedly committed by **you** or on **your** behalf in the performance of a **Managed Care Activity**;

*** *

provided that such **Claim** is first made against **you** during the **Policy Period** or applicable Extended Reporting Period and reported to **us** in accordance with Section VII Your Reporting Obligations of this Policy.

24.  Policy II contains the following Exclusions:

## II.  WHAT THIS POLICY EXCLUDES

No coverage will be available under this Policy for any **Claim, Damages,** or **Claim Expenses**:

(A)  based upon or arising out of any:

(1)  dishonest, fraudulent, criminal, or malicious act, error, or omission committed or allegedly committed by, or on behalf of, or in the name or right of, or for the benefit of any of **you**;

(2)  willful violation of any local, state, federal, or foreign act, statute, rule, regulation, requirement, ordinance, common law, or other law by, or on behalf of, or in the name or right of, or for the benefit of any of **you**; or

(3)  gaining of any profit, remuneration, or advantage to which any of **you** is not legally entitled;

provided that: (a) for the purpose of determining the applicability of this Exclusion, no act, error, or omission committed or allegedly committed by any of **you** will be imputed to any other of **you** who was not aware of and did not participate in the act, error, or omission; and (b) this Exclusion shall not apply to **Claim Expenses** unless the act, error, or omission has

11

been established by a final adjudication of the **Claim**, a final adjudication in any judicial or other proceeding, or an admission by any employee, director, officer, or other representative of any **Named Insured** appointed, authorized, or otherwise empowered to bind **you**;

\*\*\*

**(D)** based upon or arising out of any:

  (1) actual or alleged act, error, or omission if, before the Inception Date of this Policy stated in the Declarations, **you** knew or should reasonably have known that the act, error, or omission would give rise to a **Claim**;

  (2) actual or alleged act, error, or omission that, before the Inception Date of this Policy stated in the Declarations, was the subject of any notice under any prior or concurrent policy; or

  (3) prior or pending litigation or administrative, regulatory or other proceeding against any of **you** as of the Inception Date of this Policy, or the same or substantially the same act, error, or omission underlying or allege therein;

  provided that if this Policy is a renewal of one or more policies previously issued by **us** to the **Named Insured**, and the coverage provided by **us** to the **Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this Exclusion to the Inception Date will be deemed to defer instead to the inception date of the first policy under which **we** began to provide the **Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal;

**(E)** based upon or arising out of any **Claim** made against any of **you** for any act, error, or omission committed or allegedly committed during any time when **you** were not an **Insured Person** or **Named Insured**;

\*\*\*

**(I)** based upon or arising out of any act, error, or omission or series of acts, errors, or omissions committed or allegedly committed before the Retroactive Date of this Policy stated in the Declarations.

25. Policy II contains the following pertinent Definitions:

12

### III.    DEFINITIONS

\*\*\*

**(C)**    **Claim** means any written demand (including a written demand in electronic form) from any person or entity seeking money or services or civil, injunctive, or administrative relief from **you** . . .

A **Claim** will be deemed to have been first made against **you** when it is first received by **you**.

\*\*\*

**(F)**    **Damages** means any settlements, judgments, claimant's attorney's fees in an amount equal to the percentage that any **Damages** covered under this Policy for any settlement or judgment bear to the total amount of such judgment or settlement, or other amounts (including punitive, multiple, or exemplary damages if insurable under the **Law Most Favorable to Insurability,** provided that under Illinois law only vicariously assessed punitive, multiple or exemplary damages and Claim Expenses for directly assessed punitive, multiple or exemplary damages are insurable) which **you** are legally obligated to pay as a result of a **Claim**. (As amended by Endorsement No. 1). **Damages** does not include:

(1)    any fine, penalty, forfeiture, sanction, tax, fee, liquidated damages, or amount imposed by statute, rule, regulation, or other law; provided that **Damages** will include fines or penalties which **you** are legally obligated to pay as a result of a **Claim** for **Antitrust Activity** or a **Claim** for a "HIPAA Violation", if such fine or penalty is insurable under the **Law Most Favorable to Insurability**; (As amended by Endorsement No. 6)

(2)    any non-monetary or equitable relief or redress, including but not limited to any cost or expense of complying with any injunctive, declaratory, or administrative relief or specific performance award;

(3)    any payment, restitution, return, or disgorgement of any fee, profit, royalty, premium, commission, or charge, or any fund allegedly wrongfully or unjustly held or obtained, including but not limited to any profit, remuneration or advantage to which **you** were not legally entitled;

(4)    any amount any of **you** pay or may be obligated to pay under any contract or agreement, including but not limited to any policy, bond, benefit plan, or provider agreement;

(5)    any loss, cost, or expense of correcting, changing, modifying, or eliminating any policy, practice, procedure, system, or rule; or

(6)    any matter that is uninsurable under applicable law.

\*\*\*

**(G)    Insured Person** means:

(1) any past, present, or future employee, director, officer, trustee, member of the board of managers, governor or medical director of, or volunteer for, the **Named Insured**;

\*\*\*

but only while any such person is acting within the scope and capacity of his or her duties for the **Named Insured.**

\*\*\*

**(I)    Managed Care Activity** means any of the following services or activities, whether provided on paper, in person, electronically, or in any other form and whether performed by **you** or on **your** behalf:  **Provider Selection; Utilization Review, Quality Improvement Organization Programs**; adverting, marketing, selling or enrollment for health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans; **Claim Services**; establishing health care provider networks including tiered networks; provision of information with respect to tiered networks, including cost and quality information regarding specific providers, services, or charges; reviewing the quality of **Medical Services** or providing quality assurance; design or implementation of financial incentive plans; design or implementation of **Pay for Performance Programs**; wellness or health promotion education; development or implementation of clinical guidelines; practice parameters or protocols; triage for payment of **Medical Services**; calculation of medical loss ratio and related distribution; and services or activities performed in the administration or management of health care, consumer directed health care, behavior health, prescription drug, dental, vision, long or short term disability, automobile medical payment, workers' compensation plans; or scheduling of diagnostic tests. (As amended by Endorsement No. 4)

\*\*\*

**(K)    Named Insured** means the entity designated in the Declarations (the "first **Named Insured**") and each other entity listed as a **Named Insured** by endorsement to this Policy.

\*\*\*

14

**(R)**    **Related Claims** means all **Claims** based upon or arising out of the same or related acts, errors, omissions, or course of conduct or the same or related series of acts, errors, omissions, or course of conduct.

26.    Policy II contains the following defense provision:

## IV.   HOW CLAIMS WILL BE HANDLED

**(A)**    **We** have the right and duty to defend any covered **Claim**, even if the allegations of such **claim** are groundless, false or fraudulent.  **You** may propose to **us** counsel to represent **you** in connection with a covered **Claim**; provided that **we** have the right to select counsel to represent **you** in connection with any such **Claim.**

***

**(C)**    **You** will not, except at **your** own cost, incur any expense, make any payment, admit any liability, assume any obligation, or settle any **Claim** without **our** prior written consent, and no coverage will be available under this Policy for any such settlement, expense, payment, liability, or obligation.

27.    Policy II contains the following Limits of Liability provision, in pertinent part:

## V.   LIMITS OF LIABILITY AND RETENTION
***

**(F)**    **Retention.  You** will be responsible for payment in full of the amount stated as the Retention in the Declarations, which will apply to **Damages** and **Claim Expenses** from each **Claim** for which this Policy provides coverage.  **Our** obligation to make any payment under this Policy for any **Claim** will be excess of the Retention.  If **you** are unable or unwilling to pay the full amount of the Retention, the **Named Insured** will be responsible for payment in full of the Retention on **your** behalf.  **We** have no obligation whatsoever to pay any portion of the Retention; however, **we** may choose to pay a portion of the Retention, in which case **you** will repay **us** any amounts paid by **us**, and the amounts paid will be credited against and will reduce the applicable Limits of Liability unless and until they are repaid in full by **you**.  **Your** inability to pay, failure to pay, or refusal to pay any portion of the Retention will not alter or increase **our** obligations under this Policy.

28.    Policy II contains the following provision concerning treatment of "Related Claims:"

## VI.    HOW WE WILL TREAT RELATED CLAIMS

All **Related Claims** will constitute a single **Claim** regardless of:  (A) the number, identity, or addition of parties, theories of liability, or requests for relief; (B) the number or timing of the **Related Claims**, even if the **Related Claims** were made in more than one policy period; or (C) whether the **Related Claims** are asserted in a class action or otherwise.  All **Related Claims** will be treated as a single **Claim** made when the earliest of the **Related Claims** was first made against **you** or is treated as having been first made in accordance with Section VII Your Reporting Obligations of this Policy, whichever is earlier.

## COUNT I

## ONEBEACON OWES NO DUTY TO DEFEND OR INDEMNIFY THE INSUREDS AGAINST THE UNDERLYING MATTERS BECAUSE THEY RELATE BACK TO CLAIMS FIRST MADE BEFORE THE POLICY PERIOD

29.    OneBeacon hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 28, inclusive, as its allegations of this Paragraph 29.

30.    The Policies require that "Claims" be first made against the Insureds during the policy period and reported to OneBeacon within 90 days after the policy period.

31.    Policy I provides that "Related Claims" "means all **Claims** for **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way."

32.    Policy II provides that "Related Claims" means "all **Claims** based upon or arising out of the same or related acts, errors, omissions, or course of conduct or the same or related series of acts, errors, omissions, or course of conduct."

33.     Both Policy I and Policy II provide that all "Related Claims" will be treated as a single claim considered to be first made when the earliest of the "Related Claims" is first made against the Insureds.

34.     All Underlying Matters for which the Insureds seek insurance coverage constitute "Related Claims" under both Policies.

35.     At least four of the Underlying Matters were lawsuits which were filed against the Insureds prior to November 17, 2011, the inception date of Policy I. The earliest lawsuit against the Insureds of which OneBeacon is aware was filed on March 28, 2011.

36.     Because all of the Underlying Matters relate back to those lawsuits filed prior to the inception date of the Policies, the Underlying Matters were not claims first made against the Insureds and reported to OneBeacon during the policy period.

37.     Therefore, OneBeacon has no duty to defend or indemnify the Insureds against the Underlying Matters under either Policy I or Policy II.

WHEREFORE, ONEBEACON MIDWEST INSURANCE COMPANY and ATLANTIC SPECIALTY INSURANCE COMPANY respectfully pray that this Honorable Court enter a judgment in their favor and against Defendants ordering, adjudging and declaring:

a)  That OneBeacon has no duty to defend the Insureds under Policy I or Policy II with respect to the Underlying Matters;

b)  That OneBeacon has no duty to indemnify the Insureds under Policy I or Policy II for any amounts incurred as a result of the Underlying Matters; and

c)  Such additional relief that the Court shall deem just and proper.

**COUNT II**

**IN THE ALTERNATIVE, ONEBEACON OWES NO DUTY TO DEFEND OR INDEMNIFY THE INSUREDS AGAINST THE UNDERLYING MATTERS BECAUSE THEY DO NOT ALLEGE ANY ACT, ERROR OR OMISSION COMMITTED IN THE <u>PERFORMANCE OF A MANAGED CARE ACTIVITY</u>**

38.     OneBeacon hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 28, inclusive, as its allegations of this Paragraph 38.

39.     Policy I provides coverage only for "Loss" which the Insured is legally obligated to pay as a result of any "Claim" that is first made against the Insured during the Policy Period and reported to the Underwriter.

40.     Pursuant to Policy I, "Claim" "means any written notice received by any **Insured** that a person or entity intends to hold an **Insured** responsible for a **Wrongful Act** which was committed or allegedly committed on or after the Retroactive Date listed in ITEM 7 of the Declarations."

41.     Pursuant to Policy I, "Wrongful Act," in pertinent part, means "any actual or alleged act, error or omission in the performance of, or any failure to perform, a **Managed Care Activity** by any **Insured Entity** or by any **Insured Person** acting within the scope of his or her duties or capacity as such."

42.     Policy II provides coverage only for "Damages" and "Claim Expenses" in excess of the Retention that OneBeacon is legally obligated to pay as a result of a "Claim" for "an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by [the Insureds] or on the [Insureds behalf] in the performance of a **Managed Care Activity**."

43.     OneBeacon has no duty to defend or indemnify the Insureds for the Underlying Matters because they do not allege any act, error, or omission committed in the performance of a "**Managed Care Activity**."

WHEREFORE, ONEBEACON MIDWEST INSURANCE COMPANY and ATLANTIC SPECIALTY INSURANCE COMPANY respectfully pray that this Honorable Court enter a judgment in their favor and against Defendants ordering, adjudging and declaring:

a) That OneBeacon has no duty to defend the Insureds under Policy I or Policy II with respect to the Underlying Matters;

b) That OneBeacon has no duty to indemnify the Insureds under Policy I or Policy II for any amounts incurred as a result of the Underlying Matters; and

c) Such additional relief that the Court shall deem just and proper.

## COUNT III

**IN THE ALTERNATIVE, ONEBEACON OWES NO DUTY TO DEFEND OR INDEMNIFY THE INSUREDS UNDER THE POLICIES AS THE UNDERLYING MATTERS ARE BASED UPON THE SAME OR SUBSTANTIALLY THE SAME ACTS, ERRORS, OR OMISSIONS UNDERLYING PRIOR AND PENDING LITIGATION BROUGHT AGAINST THE INSUREDS PRIOR TO THE INCEPTION OF BOTH POLICY I AND POLICY II**

44.     OneBeacon hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 28, inclusive, as its allegations of this Paragraph 44.

45.     Policy I excludes coverage for alleged claims:

> based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event, **Wrongful Act** or series of facts, circumstances, situations, transactions, events or **Wrongful Acts**:
>
> > (a)     underlying or alleged in any litigation or administrative or regulatory proceeding brought prior to and/or pending as of the Inception Date stated in ITEM 2(a) of the Declarations:
> >
> > > (i)     to which any **Insured** is or was a party; . . .

46.     Policy II excludes coverage for alleged claims based upon or arising out of "prior or pending litigation or administrative, regulatory or other proceeding against any of **you** as of the Inception Date of this Policy, or the same or substantially the same act, error, or omission underlying or allege therein …"

47.     The Underlying Matters are alleged claims based upon and arising out of facts, circumstances, situations, transactions, and wrongful acts, which were alleged in litigation brought against the Insureds prior to the inception date of Policy I.

48.     The Underlying Matters are alleged claims based upon the same, or substantially the same, acts that were alleged in prior litigation filed against the Insureds prior to the inception date of Policy II.

49.     Based on the foregoing, OneBeacon has no duty to defend or indemnify the Insureds under Policy I or Policy II.

WHEREFORE, ONEBEACON MIDWEST INSURANCE COMPANY and ATLANTIC SPECIALTY INSURANCE COMPANY respectfully pray that this Honorable Court enter a judgment in their favor and against Defendants ordering, adjudging and declaring:

   a)  That OneBeacon has no duty to defend the Insureds under Policy I or Policy II with respect to the Underlying Matters;

   b)  That OneBeacon has no duty to indemnify the Insureds under Policy I or Policy II for any amounts incurred as a result of the Underlying Matters; and

   c)  Such additional relief that the Court shall deem just and proper.

**COUNT IV**

**IN THE ALTERNATIVE, ONEBEACON HAS NO DUTY TO DEFEND OR INDEMNIFY THE INSUREDS UNDER THE POLICIES AS THE INSUREDS HAD KNOWLEDGE OF ACTS, ERRORS OR OMISSIONS PRIOR TO THE POLICIES' INCEPTION DATE THAT GAVE RISE TO THE UNDERLYING MATTERS**

50.     OneBeacon hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 28, inclusive, as its allegations of this Paragraph 50.

51.     Policy I excludes coverage for alleged claims:

based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance,

20

situation, transaction, event, **Wrongful Act** or series of facts, circumstances, situations, transactions, events or **Wrongful Acts**:

(a)    underlying or alleged in any litigation or administrative or regulatory proceeding brought prior to and/or pending as of the Inception Date stated in ITEM 2(a) of the Declarations:

          ***

(ii)    with respect to which any **Insured**, as of the Inception Date, knew or should reasonably have known (based on a "reasonable person" standard) that an **Insured** might be made a party thereto; . . .

52.    The Underlying Matters are alleged claims based upon and arising out of facts, circumstances, situations, transactions, and Wrongful Acts**,** which were alleged in litigation brought prior to the inception date of Policy I.

53.    Thus, as of the inception date of Policy I, the Insureds knew or should reasonably have known that they might be made a party in the litigation.

54.    Policy II excludes coverage for alleged claims based upon or arising out of "actual or alleged act, error, or omission if, before the Inception Date of this Policy stated in the Declarations, **you** knew or should reasonably have known that the act, error, or omission would give rise to a **Claim** . . ."

55.    The Insureds were aware of certain facts or circumstances prior to the inception date of Policy II, which they knew, or should reasonably have known, would give rise to a claim against them.

56.    Based on the foregoing, OneBeacon has no duty to defend or indemnify the Insureds under Policy I or Policy II.

WHEREFORE, ONEBEACON MIDWEST INSURANCE COMPANY and ATLANTIC SPECIALTY INSURANCE COMPANY respectfully pray that this Honorable Court enter a judgment in their favor and against Defendants ordering, adjudging and declaring:

    a) That OneBeacon has no duty to defend the Insureds under Policy I or Policy II with respect to the Underlying Matters;

    b) That OneBeacon has no duty to indemnify the Insureds under Policy I or Policy II for any amounts incurred as a result of the Underlying Matters; and

    c) Such additional relief that the Court shall deem just and proper.

## COUNT V

### IN THE ALTERNATIVE, ONEBEACON OWES NO DUTY TO DEFEND OR INDEMNIFY THE INSUREDS UNDER POLICY I OR POLICY II FOR COSTS WITHIN THE SELF-INSURED RETENTION LIMIT

57.    OneBeacon hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 28, inclusive, as its allegations of this Paragraph 57.

58.    Policy I and Policy II provide that OneBeacon's obligation to make any payment with respect to any claim made under Policy I and Policy II will be in excess of the Self-Insured Retention.

59.    The Insureds have not yet satisfied their Self-Insured Retentions Policy I and Policy II .

60.    As such, OneBeacon has no duty to defend or indemnify the Insureds under Policy I and Policy II.

WHEREFORE, ONEBEACON MIDWEST INSURANCE COMPANY and ATLANTIC SPECIALTY INSURANCE COMPANY respectfully pray that this Honorable Court enter a judgment in their favor and against Defendants ordering, adjudging and declaring:

    a) That OneBeacon has no duty to defend the Insureds under Policy I and Policy II;

b) That OneBeacon has no duty to indemnify the Insureds under Policy I and Policy II; and

c) Such additional relief that the Court shall deem just and proper.

## COUNT VI

### ONEBEACON IS ENTITLED TO A DECLARATION THAT IT OWES NO DUTY TO DEFEND OR INDEMNIFY THE INSUREDS FOR THE FOLLOWING REASONS

61.     OneBeacon hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 29, inclusive, as its allegations of this Paragraph 61.

62.     The Insureds failed to obtain the consent of OneBeacon as it relates to the settlements for which the Insureds seek coverage.

63.     OneBeacon has no duty to defend or indemnify the Insureds under the Policies for settlements that were entered into by one or more Insureds prior to the inception of the Policies or without the knowledge or consent of OneBeacon.

64.     The Insureds failed to report the claims for which they seek coverage during the applicable reporting periods of Policy I and Policy II.

65.     OneBeacon has no duty to defend or indemnify the Insureds under the Policies for any claim that was not reported to OneBeacon during the applicable reporting periods of Policy I and Policy II.

66.     The claims for which the Insureds seek coverage are based upon alleged dishonest, fraudulent, criminal, or malicious acts allegedly committed by the Insureds.

67.     OneBeacon owes no duty to indemnify the Insureds under the Policies for claims based upon alleged dishonest, fraudulent, criminal, or malicious acts allegedly committed by any Insured.

WHEREFORE, ONEBEACON MIDWEST INSURANCE COMPANY and ATLANTIC SPECIALTY INSURANCE COMPANY respectfully pray that this Honorable Court enter a judgment in their favor and against Defendants ordering, adjudging and declaring:

a)  That OneBeacon has no duty to defend the Insureds under Policy I or II;

b)  That OneBeacon has no duty to indemnify the Insureds under Policy I or II; and

c)  Such additional relief that the Court shall deem just and proper.

Respectfully Submitted:

s/ Matthew T. Walsh
*Attorneys for OneBeacon Midwest Insurance Company and Atlantic Specialty Insurance Company*

Matthew T. Walsh #6205399
Benjamin A. Blume #6299814
Bevin A. Carroll #6308716
Carroll McNulty Kull LLC
100 N. Riverside Plaza- Suite 2100
Chicago, Illinois 60606
mwalsh@cmk.com
bblume@cmk.com
bcarroll@cmk.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew T. Walsh, an attorney, certify that on June 4, 2015, I electronically filed the foregoing **COUNTERCLAIM FOR DECLARATORY JUDGMENT,** via the Court's CM/ECF System, which will send notice of filing to CM/ECF participants.

s/ Matthew T. Walsh
*Attorneys for OneBeacon Midwest Insurance Company and Atlantic Specialty Insurance Company*

Matthew T. Walsh #6205399
Benjamin A. Blume #6299814
Bevin A. Carroll #6308716
Carroll McNulty Kull LLC
100 N. Riverside Plaza- Suite 2100
Chicago, Illinois 60606
mwalsh@cmk.com
bblume@cmk.com
bcarroll@cmk.com